IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| Conseco, Inc., et al., | ) | Case No.  02 B 49672 |
| Debtors. | ) | |
| | ) | Judge Carol A.  Doyle |
| | ) | |
| Conseco, Inc., | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv.  No.  05 A 00842 |
| | ) | |
| William Schwartz and Rebeca R. Frankel, | ) | |
| Trustee of the Robert M. Frankel | ) | |
| Irrevocable Insurance Trust, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on New Conseco's motion to enforce the discharge injunction and a related injunction contained in Old Conseco's (the debtor) confirmed Plan of Reorganization and the confirmation order ("Plan Injunction").   The Plan Injunction enjoins all actions against Old Conseco's reorganized successor ("New Conseco") based on any act occurring before confirmation.   The defendants in this adversary proceeding are plaintiffs in a class action filed in Pennsylvania state court against New Conseco and various insurance entities that were fourth and fifth tier subsidiaries of Old Conseco and are now fourth and fifth tier subsidiaries of New Conseco.  The Schwartz class action claims are based primarily on changes made under certain variable life insurance contracts that took effect after confirmation of Old Conseco's plan.

The parties have briefed both the question of whether this court has jurisdiction over this adversary proceeding and the substantive question of whether the discharge injunction or the Plan Injunction bars the Schwartz plaintiffs' suit. The court concludes that it has jurisdiction but that neither the discharge injunction nor the Plan Injunction bars the Schwartz plaintiffs from pursuing their claims against New Conseco.

## I.   Issues

This case presents two jurisdictional issues and one substantive issue. First, the court must decide whether a case or controversy exists, even though at the eleventh hour the Schwartz Plaintiffs filed an amended complaint in state court that dropped New Conseco as a defendant. Second, the court raised *sua sponte* the question of whether it has jurisdiction over this adversary proceeding because New Conseco is not the debtor, but instead is the reorganized successor to the debtor created pursuant to the plan which called for creation of a new corporate entity to function as the reorganized debtor. Since the court concludes that it has jurisdiction, it must address the substantive issue of whether the discharge injunction or the Plan Injunction bars the Schwartz plaintiffs from pursuing New Conseco as the alter ego of the non-debtor insurance subsidiaries for actions taken after the discharge where the proof regarding the alter ego allegations will consist largely of actions of Old Conseco before discharge.

## II.    Background

The facts are not disputed.  On December 17, 2002, Conseco, Inc. and various related

entities (collectively "Old Conseco") filed voluntary petitions for relief under Chapter 11 of the

Bankruptcy Code.  The court confirmed a plan of reorganization on September 9, 2003 ("Plan").

Article X.F of the Plan precludes all persons from "asserting against the Reorganizing or

Reorganized Debtors, their successors or their assets or properties any other or further Claims or

Equity Interests based upon any act or omission, transaction or other activity of any kind or

nature that occurred on or prior to the Confirmation Date." Plan, Art. X.F.  Paragraph 45 of the

Confirmation Order enjoins the same actions.

Pursuant to the Plan, a new corporate entity was created, also called Conseco, Inc. ("New

Conseco").  The plan transferred all of Old Conseco's assets to New Conseco free and clear of all

claims, liens, or other encumbrances, and the creditors of Old Conseco became the shareholders

of New Conseco.  The Plan was substantially consummated on September 10, 2003.  Old

Conseco was dissolved in November 2003.

Through a series of holding companies, Old Conseco owned a number of insurance

companies, none of which was in bankruptcy.   Two weeks before confirmation, one of those

insurance companies, Conseco Life Insurance Co., sent notices to policyholders of a change in

the formula for calculating amounts due under certain variable life policies.  The changes took

effect after confirmation in October 2003.   In March 2004, Conseco Life sent similar notices

concerning changes to other variable life policies that took effect in May 2004.

On February 11, 2005, William Schwartz filed a class action complaint in the Court of

Common Pleas of Allegheny County, Pennsylvania, asserting causes of action arising from the

increase in insurance premiums. The complaint alleges that New Conseco is liable as the alter

ego of the insurance defendants based on a course of conduct that stretches many years before

Old Conseco's discharge.

New Conseco then filed its Complaint for Injunctive and Declaratory Relief seeking an

injunction prohibiting the Schwartz plaintiffs from proceeding against New Conseco to the extent

that their claims are based on events occurring before confirmation of Old Conseco's Plan.  The

complaint also seeks a declaration that any of the Schwartz plaintiffs' claims based on pre-

discharge acts of Old Conseco are discharged.  Conseco also filed a motion to enforce the

discharge injunction and an emergency motion to temporarily stay the Schwartz action against

New Conseco. The parties then agreed to an order staying the state court litigation as to New

Conseco, and the parties briefed the jurisdictional and substantive issues before the court.

Other policyholders have sued Conseco Life and New Conseco in separate lawsuits.

Multidistrict litigation is pending before a federal district court in the Central District of

California.  Because the discharge issue raised by New Conseco in that proceeding is very similar

to the substantive issue in this adversary proceeding, the court permitted the plaintiffs in the

multidistrict litigation ("MDL plaintiffs") to intervene.

After an initial review of the pleadings and briefs, the court asked the parties to address

whether the fact that New Conseco is not the debtor but the reorganized successor to the debtor

affects the court's jurisdiction over this adversary proceeding.   The Schwartz and the MDL

plaintiffs then raised other jurisdictional arguments, which are addressed below.

## III.    Jurisdiction

The Schwartz and MDL plaintiffs argue that the court does not have jurisdiction over this adversary for three reasons. First, they assert that there is no case or controversy because the Schwartz plaintiffs dropped New Conseco as a defendant from the state court suit. Second, they contend that the court lacks jurisdiction under the well-pleaded complaint rule because New Conseco's complaint simply raises an affirmative defense to the state court action. Third, they argue that the court lacks jurisdiction because New Conseco is not the debtor, but instead is only a successor to the debtor that is too remote from the bankruptcy estate for the court to have jurisdiction. None of these arguments has merit.

### A.    Case or Controversy

First, the Schwartz and MDL plaintiffs assert that the court lacks jurisdiction because there is no present case or controversy. As noted above, New Conseco and the Schwartz plaintiffs agreed to a temporary stay of the state court action against New Conseco. The stay was to remain in effect until after a hearing scheduled for May 18, 2005, at which the parties expected a ruling on the discharge issue. Just before the May 18 hearing, the Schwartz plaintiffs amended their state court complaint to eliminate New Conseco as a defendant. They now assert that there is no justiciable controversy for the court to resolve.

This argument fails under the "voluntary cessation" doctrine. A defendant's voluntary cessation of a challenged practice does not render the case moot "unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Buckhannon Bd. & Care Home, Inc. v. W. Va. of Health & Human Res., 532 U.S. 598, 638 (2001) (citations omitted); see also Walsh v. U.S. Dep't. of Veterans Affairs, 400 F.3d 535, 537 (7th Cir. 2005)

("[T]his exception to the mootness doctrine is applicable ... where the challenged situation is likely to recur and the same complaining party would be subjected to the same adversity.") (citations omitted).

Here, the allegedly wrongful behavior is bringing suit against Conseco for actions that were discharged in the bankruptcy. Although the Schwartz plaintiffs amended their complaint to remove New Conseco as a defendant, New Conseco presented a letter confirming a conversation with counsel for the Schwartz plaintiffs who stated that they were preparing a separate complaint relating to the insurance contracts against New Conseco based on the same alter ego allegations. Nowhere in the many briefs filed in this action have the Schwartz plaintiffs denied the accuracy of the letter or stated that this they do not in fact intend to pursue a similar action against New Conseco.[1] Therefore, a case or controversy exists for the court to adjudicate despite the removal of New Conseco from the amended complaint in state court.

### B.    The Well-Pleaded Complaint Rule

The MDL plaintiffs also contend that the court does not have subject matter jurisdiction under 11 U.S.C. §1334 because of the well-pleaded complaint rule. Under this rule, the court must determine whether it has subject matter jurisdiction from the face of the complaint only, not from any potential defenses that may be asserted. Vohrees v. Naper Aero Club, Inc., 272 F.3d 398, 402 (7th Cir. 2001) (quoting Taylor v. Anderson, 234 U.S. 74 (1914)) ("[A] case arises under

---

[1]At a status hearing on August 3, 2005, after the court announced its conclusion that it had jurisdiction and would next address the discharge issue, counsel for the Schwartz plaintiffs orally asserted that the court's conclusion regarding their intention was "false." The court invited the Schwartz plaintiffs to dismiss the claims against New Conseco with prejudice or otherwise demonstrate that they were not in fact going to pursue New Conseco with respect to the issues raised in their state court action. They have not done so.

federal law... only when the claim for relief depends in some way on federal law, 'unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'"); see also Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998) ("[T]he 'well-pleaded complaint rule'... provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.") Although most cases applying this rule involve federal question jurisdiction under 28 U.S.C. §1331, the rule applies to bankruptcy jurisdiction under 28 U.S.C. §1334 as well. Conseco v. Adams (In re Conseco, Inc.), 318 B.R. 425 (Bankr. N.D. Ill. 2004).

When evaluating jurisdiction over a declaratory judgment action, the well-pleaded complaint rule is applied "backwards"--the court must examine the claims against the declaratory judgment plaintiff, not the allegations in the complaint, to determine if federal jurisdiction exists. See Nuclear Eng'g Co. v. Scott, 660 F.2d 241, 254 (7th Cir. 1981). This prevents a party with a federal defense to a claim over which there is no federal jurisdiction from making an end-run around the rule by raising the federal defense in a declaratory judgment complaint.

The MDL plaintiffs contend that New Conseco's adversary complaint merely raises an affirmative defense (the discharge) to the class plaintiffs' state law claims against New Conseco, which do not involve any bankruptcy issues. However, New Conseco's adversary complaint does more than merely recast an affirmative defense as a complaint for declaratory relief. New Conseco asks the court to enforce the statutory discharge injunction and the Plan Injunction by enjoining the Schwartz plaintiffs from pursuing New Conseco in state court for pre-discharge acts. Enforcement of the discharge injunction is more than a mere defense to the state court action; it is a cause of action on its own.

-7-

A debtor confronted by a creditor seeking to collect on a debt in possible violation of the discharge injunction may *either* "assert the discharge as an affirmative defense... in state court" *or* "bring an Adversary Complaint in bankruptcy court to enforce the statutory injunction under §524(a)(2) of the Code." In re Kewanee Boiler Corp., 270 B.R. 912, 918 (Bankr. N.D. Ill. 2002) (further noting that "these options are not mutually exclusive"). In fact, "the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge." Cox v. Zale Del., Inc., 239 F.3d 910, 915 (7th Cir. 2001). New Conseco's complaint raises more than a mere defense to the Schwartz plaintiffs' state court action; it states a separate and independent cause of action to enforce the discharge and Plan injunctions. Therefore, the well-pleaded complaint rule does not prevent this court from asserting jurisdiction.

### C.   Bankruptcy Jurisdiction

Finally, the Schwartz and MDL plaintiffs argue that this adversary is not within the court's jurisdiction under 28 U.S.C. §1334 because New Conseco is not the debtor, but a mere successor to the debtor without sufficient connection to the estate for the court to have jurisdiction over this proceeding. As noted above, the court invited briefs on this subject because the Seventh Circuit takes the most restrictive view of bankruptcy jurisdiction of any circuit. However, on further consideration of the issue, the court concludes that this adversary proceeding falls squarely within its core jurisdiction.

1.    **28 U.S.C. §1334**

Bankruptcy jurisdiction under 28 U.S.C. §1334 includes the power to adjudicate matters "arising in," "arising under," or "related to" a case under Title 11. 28 U.S.C. §§ 1334(b), 157(a); Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995); In re Fedpak Sys., Inc., 80 F.3d 207, 213 (7th Cir. 1996). A case "arises under" Title 11 when the action is based on a right or remedy explicitly provided in the Code. Kewanee Boiler, 270 B.R. at 917. "Arising in" jurisdiction exists when the proceeding at issue does not arise under a particular statutory provision of the Code but would have no practical existence but for the bankruptcy. Banc of Am. Inv. Servs., Inc. v. Fraiberg (In re Conseco), 305 B.R. 281, 285 (Bankr. N.D. Ill. 2004). Proceedings "arising under" Title 11 or "arising in" a case under Title 11 are within the core jurisdiction of the bankruptcy court. Kewanee Boiler, 270 B.R. at 917.

In contrast, related matters generally encompass actions under state law that are brought into the bankruptcy because of their impact on the size of the debtor's estate and, thus, on the amount of property available for distribution to the debtor's creditors. Kewanee Boiler, 270 B.R. at 917. In the Seventh Circuit, a case is "related to a bankruptcy when the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors.'" FedPak, 80 F.3d at 213-14, quoting In re Mem'l Estates, Inc., 950 F.2d 1364, 1368 (7th Cir. 1991). Related jurisdiction is "primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtors and others but that section 1334(b) allows to be forced into bankruptcy so that all claims by and against the debtor can be determined in the same

forum." Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 161 (7th Cir. 1994). Matters related to a

bankruptcy case are non-core proceedings. Kewanee Boiler, 270 B.R. at 917.

### 2.   Core Jurisdiction

This adversary proceeding is within the court's core jurisdiction because it is based on

rights explicitly provided in the Code: the discharge in 11 U.S.C. §1141(d) and the discharge

injunction in 11 U.S.C. §524(a)(2). Kewanee Boiler, 270 B.R. at 918 ("Proceedings to enforce

the statutory injunction under §524(a)(2) are core proceedings under 28 U.S.C. §157(b)(2)(O).")

(citations omitted); see also Cox v. Zale Del., Inc., 239 F.3d 910, 916 (7th Cir. 2001) (noting that

"the remedy authorized by section 524(a)(2) has the advantage of placing responsibility for

enforcing the discharge order in the court that issued it"); In re Envirodyne Indus., Inc., 206 B.R.

468, 471 (Bankr. N.D. Ill. 1997), aff'd, 214 B.R. 338 (N.D. Ill. 1997) (holding that question of

whether a claim was barred by the discharge injunction is core); In re CD Realty Partners, 205

B.R. 651, 655 (Bankr. D. Mass. 1997) (stating that a similar proceeding "to enforce the Court's

confirmation order and to determine the dischargeability of a debt ... is a core proceeding"); In re

Pettibone Corp., 121 B.R. 801, 805 (Bankr. N.D. Ill. 1990) (finding core jurisdiction to enforce

the reorganization plan).

New Conseco was a new corporation formed in accordance with the terms of the Plan to

carry out the Plan. On the effective date of the Plan, New Conseco received virtually all the

assets of Old Conseco. The original shareholders of New Conseco were the creditors of Old

Conseco who received shares of New Conseco as a part of their distribution under the Plan. New

Conseco was created to function as the reorganized debtor, even though it was a newly formed

-10-

corporation. New corporations are often created to function as the reorganized debtor in complex chapter 11 cases, for tax and other reasons.

Courts have routinely enforced the discharge injunction or the equivalent to the Plan Injunction in favor of the reorganized successor to the debtor.   In CD Realty Partners, the court enforced an injunction in the plan in favor of a new corporation formed in accordance with the plan to carry on the debtor's business after confirmation, even though the new company had been restructured at least twice after confirmation. 205 B.R. at 654.  Similarly, in Wongco v. Federated Dep't Stores, Inc. (In re R.H. Macy & Co.), 283 B.R. 140, 144-47 (S.D.N.Y. 2002), the court enforced an injunction in the confirmation order almost identical to the Plan Injunction in favor of the debtor's successor, an entity formed by the merger of the debtor into a pre-existing corporation.

The Seventh Circuit has twice enforced the equivalent to the Plan Injunction in favor of the second successor to a debtor, holding that the reorganization court should not abstain from deciding whether an injunction in a consummation order barred a lawsuit against the successor because the reorganization court was in the best position to interpret its own consummation order and to determine whether a contingent claim should have been filed in the reorganization.  In re Chi., Milwaukee, St. Paul & Pac. R.R. Co., 974 F.2d 775 (7th Cir. 1992) (successor to debtor enforced equivalent to Plan Injunction in consummation order); In re CMC Heartland Partners, 966 F.2d 1143 (7th Cir. 1992) (successor is "entitled to all benefits of the plan of reorganization and the terminal injunction against the railroad's creditors").  Although these two decisions concerning the same bankruptcy case were decided under the Bankruptcy Act of 1898 ("Act"),

the importance of the bankruptcy court enforcing the discharge and related injunctions is as great under the Bankruptcy Code as it was under the Act.

The Bankruptcy Code contemplates the formation of a new corporation to function as the reorganized entity. 11 U.S.C. §1123(a)(5). The reorganized debtor is in fact a new legal entity separate and distinct from the debtor even if a new corporation is not formed to carry out the plan. E.g., Lacy v. Fed. Deposit Ins. Corp. (In re Lacy), 183 B.R. 890, 892 n.1 (Bankr. D. Colo. 1995); In re Roy Gooden Plumbing & Sewer Co., 156 B.R. 635, 637 (Bankr. E.D. Mo. 1993). There is no indication in the Code or case law that a bankruptcy court lacks jurisdiction to enforce the discharge injunction when a new corporation is formed pursuant to the plan to operate as the reorganized debtor.

Even if the court were to conclude that the discharge injunction does not apply to a new corporation formed to function as the reorganized debtor, the Plan Injunction in this case in effect applies the discharge injunction to the reorganized successor, New Conseco. Although bankruptcy jurisdiction does not extend to all questions involving interpretation of plans or confirmation orders after confirmation, when the question involves a central bankruptcy right like the discharge, the court has core jurisdiction. Kewanee Boiler, 270 B.R. at 917; see also In re Chi., Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184, 1194 (7th Cir. 1993) (reorganization court is in the best position to interpret its confirmation order and determine whether claim discharged). Thus, whether the court applies the discharge injunction or the Plan Injunction, the question presented--whether the Schwartz plaintiffs are prohibited from pursuing claims against New Conseco because they were discharged--is within the core jurisdiction of the court.

-12-

The Schwartz and MDL plaintiffs have not cited a single case in which a bankruptcy court refused to enforce the discharge injunction or an injunction like the Plan Injunction simply because the reorganized entity was a new corporation formed to function as the reorganized debtor.  Most of the cases they rely on involve third party purchasers of the debtor's assets, not new corporations created specifically to carry out the plan.  E.g., Fedpak, 80 F.3d at 207 (debtor lacked standing to raise and the court lacked related jurisdiction to decide the question of how to interpret an order involving debtor's intellectual property rights after debtor sold those rights to a third party); Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159 (7th Cir. 1994) (no "related to" jurisdiction when third party purchaser of assets sought to enjoin post-confirmation product liability suit against it); Schwinn Cycling & Fitness, Inc. v. Benonis (In re Schwinn Bicycle Co.), 210 B.R. 747, 756 (Bankr. N. D. Ill. 1997), aff'd, 217 B.R. 790 (N.D. Ill. 1997) (no jurisdiction to determine whether third party purchaser of debtor's assets was liable under state successor liability law).  Pettibone Corp. v. Easley, 935 F.2d 120 (7th Cir. 1991), on which the Schwartz and MDL plaintiffs also rely, is equally inapplicable.  It dealt with a bankruptcy court adjudicating statute of limitations defenses to state court tort suits, not violations of the discharge injunction or a related plan injunction.

Under the Schwartz and MDL plaintiffs' view, the bankruptcy court could not perform one of its central functions--enforcing the discharge injunction--whenever a plan contained an entirely permissible provision calling for the creation of a new corporation to function as the reorganized debtor.  The court rejects that view, and concludes that this adversary proceeding falls within its core jurisdiction.

**IV.    Discharge Injunction and Plan Injunction Do Not Apply to Class Plaintiffs' Claims**

The court must next determine whether the discharge injunction or the Plan Injunction

bars the Schwartz plaintiffs from asserting their claims against New Conseco.  Whether the court

applies the discharge injunction in favor of New Conseco or the Plan Injunction, the result is the

same: the Schwartz plaintiffs are not enjoined from pursuing their claims against New Conseco.

The Schwartz plaintiffs are owners of variable life insurance policies issued by

predecessors of Conseco Life, which was a fourth tier subsidiary of Old Conseco that is now a

fourth tier subsidiary of New Conseco.  The Schwartz plaintiffs assert four causes of action

against Conseco Life and the other insurance subsidiary defendants:  breach of contract, common

law fraud, violation of a statue prohibiting bad faith by insurers and violation of a consumer

protection statute.  Each claim is based on Conseco Life's elimination of a variable (the "R-

factor") on which a monthly "cost of insurance" charge is calculated.  The alleged purpose of this

change was to increase premiums in an attempt to force elderly policyholders to surrender

policies that were no longer profitable to Conseco Life.   This change took effect after Conseco's

discharge.[2]

The Schwartz plaintiffs also seek to hold New Conseco liable as the alter ego of the

insurance subsidiaries on each of their four causes of action against the insurance subsidiaries.

They allege that, through a course of conduct over many years, Old Conseco (and later New

---

[2]With respect to one of the two types of policies at issue (Lifestyle policies), the insurance
companies sent notice of this change to policyholders on August 25, 2003, about two weeks
before confirmation, and the change took effect in October 2003, about one month after
confirmation.   With respect to the second type of policy at issue (LifeTime policies), the
insurance companies sent notice of the change on February 25, 2004 and the change took effect
in May 2004, eight months after confirmation.

Conseco) manipulated the affairs of the insurance subsidiaries without regard for their separate

corporate existences in order to divert hundreds of millions of dollars to the parent entity.   New

Conseco argues that the discharge injunction and the Plan Injunction prohibit these actions

against it because the alter ego "claim" is based primarily on alleged actions of Old Conseco

before its discharge.   The Schwartz and MDL plaintiffs argue that the claims are based on the

change in the policies made after discharge and so are not covered by the injunctions.   Thus, the

court must determine whether claims asserted on an alter ego basis against New Conseco are

discharged when the acts giving rise to the underlying claims took place after the discharge, but

the proof regarding the alter ego allegations will consist mostly of pre-discharge actions by Old

Conseco.

The MDL court decided virtually the same issue with respect to the actions before it, and

concluded that the discharge order did not bar the MDL plaintiffs' claims.  In re Conseco Life

Ins. Co. Cost of Ins. Litig., MDL No. 04-1610 (C.D. Cal. April 13, 2005) ("MDL Litigation"),

Slip op. at 8-15.   This court reaches the same conclusion with respect to the Schwartz plaintiffs,

though for somewhat different reasons.

### A.    Contingent Claims

The starting place for any analysis of whether a claim is discharged is the definition of

"claim."   The Bankruptcy Code defines "claim" broadly, and includes any

> right to payment, whether or not such right is reduced to judgment, liquidated,
> unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,
> equitable, secured or unsecured.

11 U.S.C. §101(5)(A).   This definition is "designed to ensure that 'all legal obligations of the

debtor,' *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy

-15-

case." Cal. Dep't of Health Servs. v. Jensen (In re Jensen), 995 F.2d 925, 920 (9th Cir. 1993)

(citation omitted). In some circumstances, a contingent claim has been deemed to exist even

before a cause of action has accrued. In re Chi., Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d

1184, 1192 (7th Cir. 1993); In re Chi., Milwaukee, St. Paul & Pac. R.R. Co., 974 F.2d 775, 781

(7th Cir. 1992). As one court aptly noted, a contingent right to payment "might be said to exist

somewhere on a continuum between being and nonbeing. At some point on that continuum, a

right to payment becomes so contingent that it cannot fairly be deemed a right to payment at all."

CD Realty Partners, 205 B.R. at 656. The constitutional right to due process must guide courts

in determining whether a potential right constitutes a contingent claim that is discharged in

bankruptcy. See, e.g., Hexcel Corp. v. Stepan Co. (In re Hexcel Corp.), 239 B.R. 564, 567

(Bankr. N.D. Cal. 1999).

While state or other non-bankruptcy law generally applies to the merits of a claim,

bankruptcy law governs when a claim arises for purposes of determining whether a party has a

contingent claim that was discharged in bankruptcy. Chi., Milwaukee, St. Paul & Pac. R.R. Co.,

6 F.3d at 1192. The analysis of what constitutes a claim or a contingent claim varies depending

upon the posture of the case, and must be decided on a case-by-case basis. Id.

The Schwartz plaintiffs seek to recover on an alter ego theory against New Conseco.

However, as the MDL court noted, alter ego is not a free-standing cause of action. It is an

equitable remedy that imposes liability for an underlying cause of action. Slip op. at 9; Local

159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc., 185 F.3d 978, 985 (9th Cir. 1999); Casini v.

Graustein (In re Casini), 307 B.R. 800, 811 (Bankr. D.N.J. 2004); In re Am. Telecom Corp., 304

B.R. 867, 871 (Bankr. N.D. Ill. 2004). Therefore, to determine whether the Schwartz claims

-16-

have been discharged in Old Conseco's bankruptcy, the court must examine each of the underlying causes of action asserted by the Schwartz plaintiffs against the insurance subsidiaries.

### B.    Varying Standards for Contingent Claims Based on Post-Discharge Events

The Schwartz plaintiffs' claims are based primarily on the increase in the cost of insurance charge that took effect after confirmation of Conseco's plan. Determining whether the discharge applies to claims based on conduct that occurs or knowledge that is gained after discharge is often difficult. Courts wrestling with these issues have taken different approaches depending on the type of claim involved and the particular facts of each case.

With respect to ordinary torts in which the victim has no previous contact with the tortfeasor, courts have generally concluded that no claim exists for purposes of the Bankruptcy Code until the injury occurs. E.g., Fogel v. Zell, 221 F.3d 955, 960 (7th Cir. 2000); In re Chateaugay Corp., 944 F.2d 997, 1004-05 (2d Cir. 1991); Schweitzer v. Consol. Rail Corp., 758 F.2d 936, 943 (3d Cir. 1985). But see Epstein v. Official Comm. of Unsecured Creditors (In re Piper Aircraft, Corp.), 58 F.3d 1573, 1576-77 (11th Cir. 1995) (product liability claims may exist without injury to claimant based on pre-petition relationship and pre-petition conduct of debtor). When dealing with claims for damages under statutes such as the federal environmental statutes, courts generally look at whether the claimant could have fairly contemplated a claim based on pre-discharge conditions or conduct. See In re Jensen, 995 F.2d at 930; see also AM Int'l, Inc. v. Datacard Corp., 106 F.3d 1342, 1348 (7th Cir. 1997) (CERCLA claim not discharged where company had no knowledge of environmental contamination prior to its bankruptcy); In re Chi., Milwaukee, St.Paul & Pac. R.R. Co., 974 F.2d at 787 (CERCLA claim discharged when claimant

knew it would incur response costs before discharge order became effective); In re Chateaugay

Corp., 944 F.2d at 1005-07; In re Nat'l Gypsum Co., 139 B.R. 397, 407-09 (N.D. Tex. 1992).

Courts have also applied a "fair contemplation" test to determine whether a claim exists

for breach of contract. E.g., Pearl-Phil GMT (Far East) Ltd. v. The Caldor Corp., 266 B.R. 575,

580-82 (S.D.N.Y. 2001); In re CD Realty Partners, 205 B.R. at 656; In re Russell, 193 B.R. 568,

571 (Bankr. S.D. Cal. 1996). However, a number of courts have held or at least suggested that a

party to an ordinary contract should reasonably anticipate that the other party will breach or has

made misrepresentations with respect to the contract, whether or not it was aware of any breach

or misrepresentation when the petition was filed or before the claims bar date. They conclude

that a contingent claim arises at the time of contracting, not at the time of a subsequent breach.

E.g., Pearl-Phil GMT (Far East) Ltd., 266 B.R. at 580-82 (contingent claim for breach of contract

arose when purchase orders with debtor executed post-petition; possibility of future breach was

within the presumed contemplation of contracting parties); In re Russell, 193 B.R. at 571 (party

who purchased home from debtor pre-petition had contingent claim because should have

anticipated breach or misrepresentation by debtor, even though the party was not aware of a

problem with the home until after discharge); see also In re Chi., Milwaukee, St. Paul & Pac.

R.R. Co, 6 F.3d at 1191 (recognizing that in limited circumstances a contingent contract claims

can exist before a cause of action has accrued); Schweitzer, 758 F.2d at 942-43 (in holding that

no contingent tort claim exists until the plaintiff has suffered an identifiable and compensable

injury, court distinguished tort victim from party to a pre-petition contract with the debtor who

has an established legal relationship); In re Radio-Keith-Orpheum Corp., 106 F.2d 22, 22-27 (2d

Cir. 1939) (future breach of pre-petition guarantee contract discharged; plan specifically provided

-18-

for distribution if obligation underlying guarantee breached in future). But see In re Conseco Life Ins. Co. Cost of Ins. Litig., Slip op. at 10 (applying fair contemplation test, court concluded claims were not discharged because the breach did not occur until after discharge.)

The court need not decide whether the view that a breach of an ordinary contract is always within the fair contemplation of the parties is correct or consistent with due process because the Schwartz Plaintiffs' insurance contracts are executory contracts, not ordinary contracts. An executory contract is one in which "significant unperformed obligations remain on both sides." Mitchell v. Streets (In re Streets & Beard Farm P'ship), 882 F.2d 233, 235 (7th Cir. 1989). The obligations on both sides must be "so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Id. (citing V. Countryman, Executory Contracts in Bankr.: Part I, 57 Minn. L. Rev. 439, 460 (1974)).

Insurance contracts are generally considered executory contracts. Gov't Sec. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh (In re Gov't Sec. Corp.), 101 B.R. 343, 348 (Bankr. S.D. Fla. 1989), aff'd, 111 B.R. 1007 (S.D. Fla. 1990), aff'd, 972 F.2d 328 (11th Cir. 1992). Where the policy imposes obligations of continuing performance on both parties--an obligation to pay premiums on one side and an obligation to provide insurance protection on the other--it is an executory contract. Pester Ref. Co. v. Ins. Co. of N. Am. (In re Pester Refining Co.), 58 B.R. 189, 191 (Bankr S.D. Iowa 1985); In re B. Seigel Co., 51 B.R. 159 (Bankr. E.D. Mich. 1985). The policies at issue in this case require monthly payments in return for payment of benefits. These policies are therefore executory contracts.

-19-

Executory contracts receive special treatment in bankruptcy. Under 11 U.S.C. §365(a)
and (d)(2), a Chapter 11 debtor must generally either assume or reject an executory contract by
the time of confirmation. In order to assume an executory contract, the debtor must cure or
provide adequate assurance that it will promptly cure any pre-assumption default under the
contract. 11 U.S.C. §365(b)(1). Claims arising from failure to cure past defaults are not
discharged. After assumption, the debtor must comply with all the terms of the contract going
forward. The discharge of the debtor does not bar a claim for post-discharge breach of an
executory contract. R.H. Macy & Co. v. Wongco (In re R.H. Macy & Co.), 236 B.R. 583, 590-
91 (Bankr. S.D.N.Y. 1999), aff'd, 283 B.R. 140 (S.D.N.Y. 2002). Thus, assumed executory
contracts are said to "pass through" bankruptcy unaffected by the discharge,[3] and claims for
breaches occurring after discharge are not affected by the discharge.

### C.     The Schwartz Plaintiffs' Claims

With these principles in mind, the court has considered each of the Schwartz plaintiffs'
underlying claims against New Conseco, and concludes that none is barred by the discharge
injunction or the Plan Injunction.

#### 1.     Contract Claim

The insurance contracts between Conseco Life and the Schwartz class are executory
contracts that continued in force after confirmation of the Plan. The insurance subsidiaries were
not in bankruptcy, so the insurance contracts were neither assumed nor rejected in Old Conseco's
bankruptcy. However, as Conseco acknowledges, because of the alter ego allegations, the court

---

[3]However, if an executory contract is rejected by the debtor, the rejection is generally
deemed a pre-petition breach that generates a pre-petition claim in the bankruptcy, which is
therefore subject to discharge. 11 U.S.C. §365(g).

must treat the insurance contracts as though they were between the plaintiffs and New Conseco. Because the agreements are executory contracts that the parties continued to perform after discharge, they are most analogous to assumed executory contracts that pass through bankruptcy. As discussed above, a debtor's discharge in bankruptcy does not absolve it from complying with executory contracts after discharge.    The breaches of contract alleged by the Schwartz plaintiffs are based on events occurring after the discharge.  Their contract claim therefore was not discharged in Old Conseco's bankruptcy, and neither the discharge injunction nor the Plan Injunction bars the Schwartz plaintiffs from pursuing it against New Conseco.

### 2.    Statutory Claims

The Schwartz plaintiffs' claims for breach of insurance and consumer fraud statutes are also based on post-discharge conduct by the insurance subsidiaries.  Just as a reorganized debtor must perform all of its on-going obligations under assumed executory contracts after discharge, reorganized debtors and their successors are bound to comply with state and federal statutes after discharge like any other corporation.  Ohio v. Kovacs, 469 U.S. 274, 285 (1985);  In re CMC Heartland Partners, 966 F.2d 1143, 1146 (7th Cir. 1992) ("[H]aving been a debtor in bankruptcy does not ... excuse [a company] from complying with laws of general application.").  Therefore, the Schwartz plaintiffs are not enjoined from prosecuting their claim of bad faith under the Pennsylvania insurance statute or their claim of violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law against New Conseco.

### 3.    Fraud Claim

Regarding the Schwartz' plaintiffs' common law fraud claim, as discussed above, tort claims are generally not deemed to have arisen until an injury occurs.  Here, no injury occurred as

a result of the alleged fraud until the insurance companies changed the way they calculated the premiums due under the policies after Old Conseco's discharge.  Therefore, the Schwartz plaintiffs' fraud claim is not barred by the discharge injunction or the Plan Injunction.

### D.   Evidence of Pre-discharge Actions of Old Conseco

As noted above, the Schwartz plaintiffs can only recover against New Conseco on these claims if they are able to prove it is the alter ego of the insurance subsidiaries.  The Schwartz plaintiffs allege that Conseco, Inc. (Old and New) operated the insurance companies without regard for their separate corporate existences.   They apparently will attempt to introduce evidence relating to pre-discharge actions of Old Conseco and its pre-discharge relationships with its subsidiaries.  The only issue properly before this court is whether the discharge injunction or the Plan Injunction bars the Schwartz plaintiffs from proceeding on these claims. Having concluded that the Schwartz plaintiffs are not enjoined, this court cannot adjudicate in any way the merits of the alter ego issues.   The state court presiding over the Schwartz class action is the proper court to determine what evidence is admissible to prove the alter ego allegations and whether it is equitable to hold New Conseco's shareholders accountable for the acts of Old Conseco.[4]  This court's conclusion that the injunctions do not prevent the Schwartz plaintiffs from proceeding is not intended to suggest in any way that New Conseco should be held liable for the acts of the insurance subsidiaries based on pre-discharge actions of Old Conseco.

---

[4]Under the Plan, the equity interests of Old Conseco's shareholders were completely eliminated, and the shares of New Conseco were issued to the creditors of Old Conseco.

V.    **Conclusion**

For all the reasons stated, the court concludes that it has jurisdiction over Conseco's

adversary complaint against the state court Schwartz plaintiffs.  However, neither the discharge

injunction nor the plan injunction bars the Schwartz plaintiffs' class action against New Conseco.

New Conseco's motion to enforce the discharge injunction is therefore denied.


Dated:  September 9, 2005                      ENTERED:  _____

                                               CAROL A. DOYLE
                                               United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| Conseco, Inc., et al., | ) | Case No.  02 B 49672 |
| Debtors. | ) | |
| _____ | ) | Honorable Carol A.  Doyle |
| | ) | |
| Conseco, Inc., | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.  05 A 00842 |
| | ) | |
| William Schwartz and Rebeca R. Frankel, | ) | |
| Trustee of the Robert M. Frankel | ) | |
| Irrevocable Insurance Trust, | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 9, 2005 the attached Memorandum

Opinion and Order in the above matter were mailed via First Class Mail (and faxed where

indicated) to the parties on the attached service list at their respective addresses and fax numbers.

Kathleen K. Wachtel
Kathleen K. Wachtel

## SERVICE LIST

Anup Sathy
Roger J. Higgins
Micah E. Marcus
KIRKLAND & ELLIS
200 E. Randolph Drive
Chicago, IL  60601-6636
Fax No. 312-861-2200

Thomas R. Karrenberg
Jon V. Harper
ANDERSON & KARRENBERG, APC
700 Bank One Tower
50 West Broadway
Salt Lake City, Utah  84101-2006

William Shernoff
Evangeline Garris
SHERNOFF, BIDART & DARRAS
600 S. Indian Hill Blvd.
Claremont, CA  91711-5498

John J. Stoia, Jr.
Theodore J. Pintar
Sue Collyer
LERACH, COUGHLIN, STOIA &
  ROBBINS, LLP
401 B Street, Suite 1700
San Diego, CA  92101

Korein Tillery
Three First National Plaza
70 W. Madison St., Suite 660
Chicago, IL  60602
Fax No. 312-641-9751

Andrew Freidman
BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
2910 N. Central Ave., Suite 100
Phoenix, Arizona  85012

Timothy P. Dillon
TIMOTHY P. DILLON LAW OFFICES
361 Forest Ave., Suite 205
Laguna Beach, CA  92651

Blake M. Harper
HULETT, HARPER, STEWART, LLP
550 West C St., Suite 1600
San Diego, CA  92101

David B. Rodes
GOLDBERG, PERSKY & WHITE, P.C.
1030 Fifth Ave.
Pittsburgh, PA  15219

Howard M Louik
1030 Fifth Ave., Suite 300
Pittsburg, PA  15219

Christopher J. Horvay
Theodore F. Kommers
GOLD & RATNER
222 N. LaSalle St., Suite 800
Chicago, IL  60606
Fax No. 312-236-3241

UST Robert M. Frankel TR
c/o HILB, ROGAL & HAMILTON
Warner Center
600 Grant St.
Pittsburgh, PA   15219

William Schwartz
2160 Greentree Road
Apt. 610w
Pittsburgh, PA   15220

Edwin Jacob Garn
1267 Chandler Circle
Salt Lake City, UT   84103

The Murray Gomer Irrevocable Trust
Murray Gomer
10390 Wilshire Blvd.
Apt. 1116
Los Angeles, CA  90024-6455